# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FALCONCREST AVIATION, L.L.C., a Nevada limited liability corporation and CRESTON AVIATION, INC., <br><br> Plaintiff(s), <br><br> vs. <br><br> BIZJET INTERNATIONAL SALES AND SUPPORT, INC., an Oklahoma corporation, HIGGINS INTERIORS, INC., an Oklahoma corporation and WALKER WEATHERS, d/b/a WEATHERS AVIATION, INC., an individual, <br><br> Defendant(s). | Case No. 03-CV-577-TCK-SAJ |

## OPINION AND ORDER

The Court heard argument on Plaintiffs' Motion to Compel Production, Motion for Contempt, and for Rule 37 Sanctions against Defendant Bizjet International Sales and Support, Inc. ("Bizjet"). [Docket No. 168]. The Court has considered the arguments of counsel, the authorities cited by the parties, and the facts as presented by the parties at the hearing. Plaintiffs motion is **granted in part and denied in part.** The Court finds that the motion to compel is granted. The Court has ordered, by previous Order, that certain documents submitted to the Court for *in camera* review be produced to Plaintiffs. The motion for Rule 37 sanctions is granted. The Court denies the motion to find Defendants in contempt of Court.

### I.   FACTS AND PROCEDURAL BACKGROUND

On March 25, 2005, Bizjet filed a motion to Quash the taking of a deposition duces tecum to the extent that the subpoena requested investigation file materials and documents

that were created after August 7, 2002. [Docket No. 68-1]. Plaintiffs sought the entire case file of Mr. Montgomery. Bizjet asserted that anything generated or created after August 7, 2002, was protected by work product because the documents were prepared in anticipation of litigation. The Court found that Mr. Montgomery's documents should be produced to Plaintiffs because: (1) Bizjet had purposefully produced documents from Mr. Montgomery's investigative file and relied on Mr. Montgomery's records in responding to interrogatories, and (2) Bizjet had waived any potentially applicable privilege because Bizjet had failed to timely produce a privilege log. The Court ordered Plaintiffs to prepare a proposed Order for the Court's signature. The Court reviewed the proposed order that was submitted by Plaintiffs, and entered an Order reflecting the holding of the Court on April 28, 2005. [Docket No. 83-1].

On June 15, 2005, AIG Aviation moved for a protective order with regard to a subpoena of Robert McNabb by Plaintiffs. [Docket No. 90-1]. AIG Aviation listed 46 documents on the privilege log. Prior to the hearing before the Court, the parties agreed to either produce or not produce approximately one-half of the documents listed on the privilege log. After the hearing, the Court reviewed 23 disputed documents *in camera*. The Court entered an Order on June 23, 2005, finding that AIG Aviation had not sufficiently established that the parties had anticipated litigation to the degree necessary to justify the protections afforded the work product doctrine with respect to many of the documents produced *in camera*. [Docket No. 98-1]. The Court ordered the production of most of the documents submitted for *in camera* review.

AIG Aviation filed an appeal of the Order on July 5, 2005, requesting that the District Court find that document number 42 not be produced. The District Court considered the appeal and denied it on August 4, 2005. [Docket No. 143-1].

The deposition of Mr. McNabb was taken by Plaintiffs on August 17, 2005. During the deposition of Mr. McNabb, Plaintiffs' attorney asked several questions regarding e-mails, quarterly reports made to Heath, Lambert Group, and handwritten documents. *See* [Docket No. 168], deposition testimony of Mr. McNabb, attached as Exhibit "D" to Plaintiffs' Brief, at 17, 20, 21, 53. Plaintiffs' attorney asked if Mr. McNabb had produced his "investigative file" to AIG's Attorney. Mr. McNabb stated yes, and subsequently clarified that the file had been produced to the Rose Walker law firm and, he assumed, later provided to AIG Aviation's counsel. *See* [Docket No. 168-1], deposition testimony of Mr. McNabb, attached as Exhibit "D" to Plaintiffs' Brief, at 17, 20, 21, 53. Mr. McNabb is queried several times as to whether the documents, including the e-mails, quarterly reports, and other handwritten documents were part of Mr. McNabb's "investigative file" that was provided to Rose Walker. Mr. McNabb answered that such documents were part of his investigative file. *See* [Docket No. 168-1], deposition testimony of Mr. McNabb, attached as Exhibit "D" to Plaintiffs' Brief, at 17, 20, 21, 53.

AIG Aviation's attorney was not present at the McNabb deposition. Bizjet's attorney, Ms. Kennedy, was present at the deposition. The record reflects that no effort was made by Bizjet's attorney at the deposition to correct any "misunderstanding" with regard to the contents of the "investigative file;" no effort was made by Bizjet's attorney to provide any explanation as to why certain documents Mr. McNabb stated were in his "investigative file,"

were not produced; no effort was made by Bizjet's attorney to clarify that the documents were retained by either Bizjet or Mr. McNabb, and not AIG Aviation's counsel.

On August 18, 2005, the day after the conclusion of Mr. McNabb's deposition, attorneys for Plaintiffs wrote to AIG Aviation's attorney. *See* [Docket No. 168-1], letter dated August 18, 2005, attached as Exhibit "E" to Plaintiffs' Brief. The letter notes that during the August 17, 2005, deposition of Mr. McNabb, it became apparent that a number of documents had not been produced by AIG Aviation and had not been placed on the privilege log provided by AIG Aviation. The letter specifically references handwritten notes, e-mail reports, and written reports to Heath Lambert Group. Plaintiffs' attorney requests that the referenced documents be produced.

AIG Aviation's attorney responded to Plaintiffs' attorney on that same day (August 18, 2005) by e-mail. AIG Aviation's attorney stated that he had only the documents listed on the privilege log, and that the law firm representing Bizjet had provided those documents to him and had prepared the privilege log that was provided to Plaintiffs. This appears to be the first time that Plaintiffs learned that Bizjet's attorneys had reviewed the McNabb file and prepared the privilege log rather than the privilege log being prepared by attorneys for AIG Aviation.

On August 19, 2005, Plaintiffs' attorney e-mailed Bizjet's attorney, forwarding both AIG Aviation's explanation (that Bizjet's attorney had reviewed the documents and submitted the privilege log), and the letter previously sent to AIG Aviation requesting the documents. Plaintiffs requested that the documents be produced by Bizjet. Bizjet's attorney, Kristina Kennedy, responded by e-mail on August 19, 2005, that she was out of the office and would respond "shortly."

-- 4 --

The record reflects no response sent by Bizjet prior to August 25, 2005, and no response received by Plaintiffs prior to August 25, 2005. On that date, by e-mail, Plaintiffs' attorney requested a written response by August 26, 2005. Ms. Kennedy replied that a response by August 26, 2005 would not be possible because she needed to review Mr. McNabb's file which had been returned to Mr. McNabb, and which she consequently did not currently have in her possession.

Plaintiffs' attorney responded, by e-mail dated August 25, 2005, noting that Bizjet's attorney had remained silent at the deposition even though McNabb had listed numerous documents that were not produced; that Plaintiffs subsequently discovered that AIG Aviation had not reviewed the documents or prepared the privilege log; that Plaintiffs had previously litigated the issues and had already expended a considerable amount of time and money on the issue, and that Plaintiffs' attorney was upset with the way the matter had been handled and was contemplating requesting sanctions.

AIG Aviation's attorney wrote on August 25, 2005, that his recollection was that he and Plaintiffs' attorney had reached an understanding to limit the documents requested by the subpoena to those in the "investigative" file. AIG Aviation also notes that the documents ultimately included only 45 pages on the privilege log, and therefore Plaintiffs' attorney should have realized that not all of the documents in the file had been produced.[1] Plaintiffs' attorney responded that Mr. McNabb testified that the documents which Plaintiffs' attorney was interested in were part of Mr. McNabb's investigative file.

---

[1] The Second Amended Privilege Log which includes the "original" 45 documents from the first privilege log, lists 155 total documents. Thus even the subsequently produced privilege log contains a little over 100 additional documents, with an additional five documents produced by Bizjet to Plaintiffs. Two of the five documents produced to Plaintiffs duplicate documents on the privilege log.

On August 29, 2005, Bizjet's attorney, Ms. Kennedy, responded that during the McNabb deposition she objected to the form of the questions by Plaintiffs' attorney because Plaintiffs' attorney had characterized the reports as part of McNabb's "investigative file" when the documents were not investigative and therefore not produced. The deposition of Mr. McNabb has been reviewed by the Court. The deposition contains several objections by Ms. Kennedy as to the form of the question, but no explanation that the documents were not "investigative" in nature and no statement that the documents were not included within the "investigation portion" of McNabb's file. In fact, contrary to Ms. Kennedy's explanation, the witness, Mr. McNabb, testified at the deposition that the files were in his "investigation" file and that his understanding was that the documents had been produced to AIG Aviation's attorney and pursuant to the Court order, to Plaintiffs.

During oral argument on the motions, Ms. Kennedy stated that she did not, at the deposition, understand that Plaintiffs' attorney believed that certain documents should have been produced which had been withheld. The record reflects that Ms. Kennedy made no effort during the deposition to clarify the nature of the documents produced as compared to those that were withheld. During oral argument Ms. Kennedy indicated that she was simply not aware that any problem existed at the time of the deposition.

Plaintiffs responded to Ms. Kennedy's e-mail within 30 minutes. Plaintiffs noted the previously produced documents, the testimony of Mr. McNabb that similar documents existed, and Mr. McNabb's statement that such documents were included in his investigative file. Plaintiffs requested that the additional handwritten notes, e-mails, and reports to Heath, Lambert group be produced.

In subsequently exchanged e-mails, Plaintiffs' attorney requests an estimate of the amount of time necessary for Bizjet to receive and review the McNabb documents, and suggests that two weeks should be sufficient. Bizjet's attorney indicates she will "do her best."

In an e-mail dated September 1, 2005, from Bizjet's attorney to Plaintiffs attorney, Ms. Kennedy notes that the documents are "in route" to her and will be reviewed with a response provided the following Tuesday. Subsequently exchanged e-mails indicate that the parties did not agree with respect to a production or review time table versus the filing of the motion to compel.

On September 6, 2005, Plaintiffs filed a motion to compel, and to show cause for contempt, and for sanctions. [Docket No. 168-1].

AIG Aviation's attorney submitted two affidavits. *See* [Docket No. 180], Exhibit 1, Affidavit of Kerry R. Lewis, and [Docket No. 193-1]. In his first affidavit, AIG Aviation's attorney notes that he and Plaintiffs' attorney agreed that the scope of the subpoena was too broad, and that the materials in McNabb's file related to "coverage work" were not subject to the subpoena. Plaintiffs' attorney agrees that he was seeking Mr. McNabb's investigation file, including any handwritten notes to Mr. Montgomery. AIG's attorney notes in his first affidavit that he discussed the matter with Bizjet's attorney, Ms. Kennedy, and it was agreed that Ms. Kennedy's firm would prepare the privilege log based upon the understanding reached with Plaintiffs' attorney.

In his second affidavit, submitted after oral argument on Plaintiffs' motions, AIG Aviation's attorney notes that during the hearing on Plaintiffs motion to compel and for sanctions, "it became clear to me that there was a fundamental misunderstanding between

Richard Love and myself regarding the scope of the documents he was seeking from Mr. McNabb." [Docket No. 193-1] at ¶ 2.  Mr. Lewis, in his affidavit, notes that both he and Plaintiffs' attorney agreed to limit the scope of the discovery to McNabb's "investigation file."  Mr. Lewis notes that he spoke with Mr. McNabb about his file and made assumptions that the file included a discrete sub-file that was an "investigation file."  Mr. Lewis believed that this file would include the investigative reports prepared by Mr. Montgomery and any other investigators hired by Mr. McNabb with regard to the claim.  [Docket No. 193-1].

Mr. McNabb submitted two affidavits.  At oral argument Ms. Kennedy noted that the affidavits submitted by Mr. McNabb were prepared by Ms. Kennedy.  *See* [Docket No. 180], Exhibit 2, Affidavit of Robert McNabb.  In the first affidavit, Mr. McNabb notes that documents that he is aware of at his office include insurance coverage documents (which the parties agreed not to produce).  Mr. McNabb defines "the claims file materials" relating to the defense of Bizjet as a "second category" of documents.  Mr. McNabb notes that the claims file materials includes communications between attorneys and AIG Aviation.  Mr. McNabb indicates that the claims file materials also includes investigative reports prepared by Patrick Montgomery before and after the Plaintiffs' lawsuit was filed.

In a second affidavit submitted by Mr. McNabb, he notes that he provided his entire claims file to Bizjet's attorneys.  *See* [Docket No. 180], Exhibit 3, Second Affidavit of Robert McNabb.

> In this case, I made some attempt to keep documents that pertain to the coverage issue that arose between AIG and Bizjet in a separate file folder within the claims file.  I made no attempt to segregate documents that result from the investigation of the claim from other documents in my claims file, and it is not my practice to do so.

> I consider documents of the kind that Plaintiffs are seeking, including my reports to my supervisors within AIG or to outside reinsurance brokers or participating reinsurers, to be administrative in nature. They do not arise out of the investigation of the accident and I do not consider them to be investigative in nature.

*See* [Docket No. 180], Exhibit 3, Second Affidavit of Robert McNabb, ¶ ¶ 3, 4.  Mr. McNabb additionally addressed his deposition testimony and attempted to clarify his understanding with regard to the documents about which Plaintiffs' attorney was questioning him.

> The documents I was describing for counsel and that Plaintiffs now seek, such as reports to my supervisors and reports to London underwriters, are contained in my claims file. I do not keep a separate "investigation file" and to the extent Mr. Love's questions refer to an "investigation file" I understood him to mean my claims file generally.

*See* [Docket No. 180], Exhibit 3, Second Affidavit of Robert McNabb ¶ 5.

## II.     SANCTIONS SHOULD BE IMPOSED

Defendant maintains that the entire situation was created by a misunderstanding as to the contents of an "investigative file" as compared to either a "claims file" or Mr. McNabb's entire file.  Defendant notes that the agreement to limit the documents requested by Plaintiffs to the "investigative files" was reached by AIG Aviation and Plaintiffs' attorney and did not involve Bizjet's attorney.  The record supports this assertion.  Bizjet's attorney seems to suggest that she should not be held accountable for an understanding reached between two attorneys when she was not a party to the understanding.  However, at the time the agreement was reached between Plaintiffs' attorney and AIG Aviation's attorney, Plaintiffs' attorney was under the impression that the privilege log and documents were being prepared by AIG Aviation.  Plaintiffs' attorney was certainly unaware that Bizjet's

attorney had prepared the privilege log because he directed his letter requesting supplemental production (after McNabb's deposition) to AIG Aviation's attorney.

Bizjet's attorney represented at the hearing before the Court that the documents were clearly not part of the "investigative file" and that therefore the documents were not produced. Bizjet's attorney indicated that she had worked with Mr. McNabb over a period of years, that she was accustomed to dealing with his files, and that she knew he understood that the documents were not part of an "investigative file."

During the course of his deposition Mr. McNabb identified the documents as part of an "investigative file." In his affidavit explaining his deposition testimony, Mr. McNabb indicates that he assumed Plaintiffs' attorney was talking about documents in McNabb's "claims file" when Plaintiffs' attorney asked about an investigative file.

Based on the record and the information presented at the hearing before the Court, the Court cannot conclude that Bizjet's attorney intentionally misunderstood Plaintiffs' intent in agreeing to limit the scope of production to "investigative" files. Based on the record, the Court concludes that a true misunderstanding occurred between the parties. Initially, the Court notes that if Bizjet's attorney had fully understood the nature of the misunderstanding at McNabb's deposition she probably would have, and certainly should have, attempted to clarify the record during McNabb's deposition. In addition, the e-mails exchanged between the parties following the deposition certainly support the conclusion that Bizjet and Plaintiffs misunderstood the opposing parties use of the term "investigative files" or "investigative documents." Finally, the affidavits submitted by AIG Aviation's attorney support the conclusion that this incident was a true misunderstanding between the parties.

However, although the Court can accept that the initial oral agreement between the parties to limit the scope of the production resulted in a misunderstanding between the parties, the Court believes that the subsequent actions of Bizjet's attorney justifies the imposition of sanctions. The deposition occurred on August 17, 2005, and Bizjet did not produce additional documents to Plaintiffs until September 28, 2005. [Docket No. 185-1].

The Court has had some difficulty accepting Ms. Kennedy's representation that, during the deposition of Mr. McNabb, she had no idea that a problem was developing with regard to document production. The deposition contains several instances in which Plaintiffs' attorney asks about types of documents and then asks if the documents were part of McNabb's investigative file. However, as noted above, hopefully if Ms. Kennedy had been aware of the full extent of the misunderstanding she would have attempted to correct this misunderstanding on the record during the McNabb deposition, or at the very least written to counsel to explain the confusion.

The McNabb deposition occurred on August 17, 2005. Plaintiffs attorney wrote to AIG Aviation the following day, and learned that AIG Aviation had not handled the review of the documents, but that that task had been performed by Bizjet's attorney. On August 19, 2005, Plaintiffs contacted Bizjet's attorney, and was informed that she would respond "shortly." Plaintiffs attorney again contacted Bizjet attorneys on August 25, 2005, and demanded a response by August 26, 2005.

Beginning on August 25, 2005, the parties exchanged e-mails as to the oral agreement that was reached by the parties to limit production to the "investigative file." On September 1, 2005, Bizjet's attorney informed Plaintiff that the documents were "in route" to her for her to review. The motion for sanctions was filed September 6, 2005. A limited

number of documents were finally produced to Plaintiffs on September 28, 2005. In addition, on September 28, 2005, a privilege log was prepared, and approximately 20 additional documents were provided to the Court for *in camera* review. Ms. Kennedy has no explanation for the delay of the additional production of documents which occurred from September 1, 2005, when she again received Mr. McNabb's file for review, until the end of September when a privilege log and a limited number of documents were produced by Bizjet.

Although the deposition occurred on August 17, 2005, and Bizjet was aware of difficulties concerning the understanding of the parties and the scope of production by August 19, 2005, no documents were produced and no privilege log was prepared and submitted to Plaintiffs until September 28, 2005. The Court is very troubled by the delay in the review by Bizjet of the documents and the delay in the subsequent production to Plaintiffs (along with the *in camera* submission to the Court), especially given the litigation history with respect to this issue.

Fed. R. Civ. Proc. 37 provides for the awarding of certain costs and sanctions upon the granting of a motion to compel or the failure of a party to adequately respond to or supplement discovery requests. Reasonable expenses, including attorneys fees are to be awarded by the Court upon the granting of a motion related to an evasive or incomplete disclosure, answer, or response.

> If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the

> motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Fed. R. Civ. Proc. 37(a)(4)(A).

> If the motion is granted in part and denied in part, the court may enter any protective order authorized under Rule 26(c) and may, after affording an opportunity to be heard, apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just matter.

Fed. R. Civ. Proc. 37(a)(4)(C). In addition, under Fed. R. Civ. Proc. 37, a court may impose reasonable sanctions.

> A party that without substantial justification fails to disclose information required by Fed. R. Civ. Proc. 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition, to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorneys fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

Fed. R. Civ. Proc. 37(c)(1).

Plaintiffs explained that not only have Plaintiffs incurred additional attorneys fees and costs in preparing and responding to the additionally required motions, but that Plaintiffs have also been prevented from inquiring, at the deposition of Mr. McNabb, about documents because those documents had not been produced. At oral argument, counsel for Plaintiffs explained that issues related to these documents are important to a portion of their case, and that Mr. McNabb's recollection was faulty with respect to some items which

the documents could be relied upon to refresh Mr. McNabb's recollection. The Court will not attempt to second-guess trial strategy or the importance of particular documents to the overall theory of a litigant's case. Plaintiffs have presented sufficient information to the Court for the Court to conclude that Plaintiffs were prejudiced by the failure of Bizjet to produce such documents prior to the deposition of Mr. McNabb.

## III. SANCTIONS

The Court concludes that sanctions shall be imposed upon Bizjet for their conduct in the discovery dispute. Sanctions are appropriate because Bizjet failed to adequately, reasonably, and timely remedy the mistakes made in the production of documents in the discovery dispute. The documents subject to the production requests were vigorously contested by the parties. The Court concludes that Bizjet should have acted more quickly in responding to Plaintiffs' requests and should have made more of an effort to attempt to remedy any misunderstanding with respect to "investigative documents or file," especially since Bizjet was not a party to the original oral agreement that limited the scope of discovery.[2] Consequently, the Court concludes that Bizjet should pay the reasonable costs and expenses incurred by Plaintiffs in pursuing this motion, including attorneys fees. The Court intends that the reasonable expenses include the attorneys fees and costs incurred for the briefing and oral argument with regard to the motion to compel and for sanctions.

---

[2]  The Court is additionally concerned at this "division" by Bizjet and AIG Aviation of discovery responsibilities. The misunderstanding that has precipitated this motion might have been avoided if either AIG Aviation's attorney had been provided the documents and conducted the review and talked with Plaintiffs attorney, or if Bizjet's attorney had discussed the document production with Plaintiffs' attorney since Bizjet's attorney retained the file and represents that she had a specialized understanding of McNabb's documents. However, in this case, AIG Aviation handled the telephone calls with Plaintiffs' attorneys although he did not have the documents, and Bizjet's attorney retained the documents but did not talk with Plaintiffs' attorney regarding them.

If the parties are unable to reach an agreement as to this amount, the parties may submit appropriate briefs to the Court and the Court will determine the particular dollar amount of the award.

The Court additionally concludes that Plaintiffs have been prejudiced because the documents were not made available to Plaintiffs prior to the deposition of Mr. McNabb. Although Mr. McNabb did work for Bizjet on this case, he is not a Bizjet employee. The Court will therefore permit Plaintiffs additional time within which to take a second deposition of Mr. McNabb and order Bizjet to do all that it reasonably can to facilitate such a deposition. The Court additionally orders Bizjet to pay the costs of producing Mr. McNabb for a deposition, including travel costs, but finds that Plaintiffs shall bear their own attorneys fees for a second deposition of Mr. McNabb.

The Court does not find that Bizjet is in contempt of court. The prior Court order required production of specified documents rather than categories or types of documents, and consequently the failure to produce the current documents is not violative of the prior Order. In addition, the Court is not persuaded that the conduct of Bizjet was initially intentional. The sanctions imposed by the Court are for the failure by Bizjet to respond in a timely and reasonable fashion after the misunderstanding with regard to discovery between the parties was uncovered.

IT IS SO ORDERED.

Dated this 12th day of October 2005.

*Sam A. Joyner*
Sam A. Joyner
United States Magistrate Judge