UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FALCONCREST AVIATION, L.L.C., a Nevada limited liability corporation, and CRESTON AVIATION, INC., a Florida corporation,<br>                       Plaintiffs,<br><br>v.<br><br>BIZJET INTERNATIONAL SALES AND SUPPORT, INC. an Oklahoma corporation, HIGGINS INTERIORS, INC., an Oklahoma corporation, and WALKER WEATHERS, an individual,<br><br>                       Defendants. | Case No. 03-CV-0577-CVE-SAJ |

**OPINION AND ORDER**

Now before the Court is Plaintiffs' Combined Motion to Strike Supplemental Expert Report of Edward Mendenhall and Motion in Limine to Exclude Additional Testimony at Trial (Dkt. # 102). Plaintiffs, Falconcrest Aviation, L.L.C. and Creston Aviation, Inc., move, under Rule 37 of the Federal Rules of Civil Procedure, to exclude the supplemental report of defense expert, Edward Mendenhall, and to preclude him from offering testimony at trial from that supplemental report.

**I.**

Under the Third Revised Scheduling Order entered in this matter (Dkt. # 63), defendants' deadline for submission to plaintiffs of expert witness reports was February 15, 2005. Defendant, Bizjet International Sales and Support, Inc. ("Bizjet" or "defendant"), timely submitted Mendenhall's original Rule 26 report, dated November 1, 2004. On March 30, 2005, plaintiffs

deposed Mendenhall. On June 23, 2005, the final day for discovery,[1] defendant faxed to plaintiffs a supplemental report by Mendenhall. At that time, trial was set for August 15, 2005. Plaintiffs move, pursuant to Rule 37, to strike that supplemental report and to exclude any new testimony contained therein from trial.

**II.**

Plaintiffs' motion implicates the combined effects of Rules 26 and 37 of the Federal Rules. Rule 26 commands that expert reports contain

> a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2)(B). The rule governing the disclosure of expert opinions serves an important purpose in apprising a party of the views of the opposing party's experts and permits adequate preparation for depositions and cross-examination at trial. See Jacobsen v. Deseret Book Co., 287 F.3d 936, 953 (10th Cir. 2002); .

Rule 37 contains a self-executing exclusion mechanism which precludes the use at trial of previously undisclosed expert opinion. It provides:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

---

[1] By an Order dated April 12, 2005 (Dkt. # 74), the Court granted the parties' motion to extend the discovery deadline to June 23.

Fed. R. Civ. P. 37(c)(1). Thus, a party who submits an incomplete initial expert report may suffer the exclusion of any additional testimony contained in a supplemental report. Anderson v. Hale, No. CIV-02-0113-F, 2002 WL 32026151, at *2 (W.D. Okla. Nov. 4, 2002) ("[T]he combined effect of Rule 26(a)(2)(B) and 37(c)(1) is that he who fails to provide a comprehensive expert report does so at his peril.").

In determining whether an expert's failure to disclose testimony as required under Rule 26, constitutes a harmless omission under Rule 37, the Court considers the following factors: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. Jacobsen, 287 F.3d at 953; Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999).

Having reviewed the original and supplemental reports completed by Mendenhall, the Court identifies two substantive changes.[2] Those changes are as follows: (1) a more extensive criticism of the actions of pilot in command ("PIC"), Gordon Trobert, who was flying the plane when it veered off the runway, which includes analysis of wind speeds at the time of the incident and (2) the inclusion of the results of independent testing Mendenhall conducted on a G-III aircraft, involving intentional misalignment of the steering system to determine its effect on the nose tires.

---

[2]  Some of the changes to the report are not as "radical" as plaintiffs suggest. At certain points in the supplemental report, Mendenhall includes page citations for referenced deposition testimony or rewords, or elaborates on, a statement contained in his original report. These changes are not significant, and no prejudice inheres by virtue of their inclusion. Jacobsen, 287 F.3d at 953 ("[A] district court can allow evidence violating Rule 26(a) only if the violation was justified or harmless.").

3

The Court begins with Mendenhall's additional opinions concerning PIC Trobert's handling of the aircraft during the incident. In both his original and supplemental reports, Mendenhall identifies the failure of plaintiff Creston Aviaton to correct a known wheel steering problem as the primary cause of the incident and the actions of PIC Trobert, the pilot retained to fly the plane, as a contributing cause of the incident. Plaintiffs are correct that Mendenhall's supplement report contains an expanded listing of the faults he attributes to Trobert. In his initial report, Mendenhall criticizes Trobert for attempting flight from Ardmore to Fort Lauderdale aware of an inoperative fuel quantity system; for failing to identify the antiskid system problem and the nose wheel steering problem as he taxied the airplane to the departure runway; and accepting the plane without a Minimum Equipment List, required when an aircraft is flown with inoperative equipment. Defendant's Bizjet International Sales and Support, Inc's Response to Plaintiff's Motion to Strike (hereinafter "Defendant's Response") (Dkt. # 133), Ex. 5, Initial Mendenhall Report.

In his subsequent report, Mendenhall goes further, raising questions about the accuracy or veracity of Trobert's claim that when the plane pulled to the right during taxi down the runway, he attributed the movement to the force of the wind on the tail of the aircraft. Plaintiff's Combined Motion to Strike Supplemental Expert Report of Edward Mendenhall and Motion in Limine to Exclude Additional Testimony at Trial (hereinafter "Motion to Strike") (Dkt. # 102), Ex. 1, Supplemental Mendenhall Report. Given wind speeds on the day of the incident, Mendenhall contends that wind could not have been the cause of the aircraft's misdirection and, therefore, Trobert should have known that something was amiss in the steering system. In his second report, Mendenhall also takes issue with Trobert's testimony that he used the rudder for directional control at a speed of 90 knots. As the Court understands Mendenhall's criticism, this evidences a lack of

understanding of rudder control on Trobert's part, since rudder control becomes effective at 60 knots. Id.   Finally, Mendenhall's supplemental report accuses Trobert of a lack of understanding of the G-III's takeoff and stopping performance.  Trobert testified that he would never use wheel brakes during the abort of an attempted takeoff.  According to Mendenhall, however, the "[m]aximum wheel braking is to be used in any abort" situation, assuming the antiskid system is functional, as Trobert represented that he believed it was.  Id.

Defendant insists that the inclusion of these new views on Trobert's performance cannot prejudice or surprise plaintiffs, since Mendenhall made clear during his deposition that he held other opinions on Trobert's handling of the aircraft.  They cite the following exchange between counsel during Mendenhall's deposition:

> Mr. Chubbuck [Former Counsel for Defendant]: Let me say one more time for you that I do intend to ask him lots and lots of questions about Mr. Trobert's performance, both in evaluating the situation, making the takeoffs, taxiing out and all kinds of things like that, and I'm offering you all the opportunity in the world to inquire in any detail that you want about that right now.
>
> Mr. Petrikin [Counsel for Plaintiffs]: Okay. I understand.
>
> Mr. Chubbuck: You decline to do so?
>
> Mr. Petrikin: Yes.

Defendant's Response (Dkt. # 133), Ex. 2, Deposition of Edward D. Mendenhall (hereinafter "Mendenhall Deposition"), at 71-72.  Mendenhall also testified that he had an opinion on Trobert's handling of the plane after it veered from the runway:

> Q: You have offered no opinion in your report with regard to Captain Trobert's handling of the emergency once the aircraft deviated from the runway; is that correct?
>
> A: I have not offered an opinion in my report, that's correct.

> Q: Well, and do you intend at the trial of this case to offer an opinion as to Captain Trobert's reaction to the aircraft deviating from the runway?
>
> A: I have an opinion, and I would offer it.
>
> Q: All right.

Id. at 60. Mendenhall's responses alerted plaintiffs to his additional opinions, defendant argues.

Defendant's argument, in a certain respect, misses the point. One of the purposes of the disclosure requirements of Rule 26 is to inform an opposing party of a proposed expert's anticipated testimony so that the opposing party's counsel can sufficiently prepare to depose the proffered witness. See Fed. R. Civ. P. 26 advisory committee's note (noting that at least one goal of the requirement that full disclosure be made ahead of time was to avoid the problem of prior disclosure practices which were often "of little help in preparing for a deposition of the witness"). If an attorney neglects to ask questions relating to content not included in an original report, that attorney can hardly be faulted. Rule 26 also aims to streamline the discovery process, by permitting deposing counsel to be prepared and precise in seeking information. Fed. R. Civ. P. 26 advisory committee's note ("Since depositions of experts required to prepare a written report may be taken only after the report has been served, the length of the deposition of such experts should be reduced, and in many cases, the report may eliminate the need for a deposition."). In the Court's view, this purpose is severely undercut if deposing counsel is expected to engage in a kind of interrogative fishing expedition in search of information an expert intends to proffer at trial, but has not included in his or her submitted report.

By providing plaintiffs with a supplemental report raising new concerns about Trobert's performance after plaintiffs deposed Mendenhall, defendant deprived plaintiffs of the ability to obtain Mendenhall's full views on the subjects in question. For instance, plaintiffs could reasonably

have questions regarding the source of the wind speeds Mendenhall invokes in his second report and the basis of his beliefs that rudder control is effective at speeds under 90 knots and that utilizing the wheel brake in an emergency abort situation is appropriate in a G-III aircraft. Plaintiffs did not have the opportunity to explore these, and other, questions, since Mendenhall's original report did not put plaintiffs on notice that he intended to offer such opinions at trial. See Jacobsen, 287 F.3d at 954 ( "Prejudice results because the expert reports did not reveal what the experts will testify to at trial.").

The Court reaches the same conclusion as to Mendenhall's additional, independent testing of the effect of misalignment in the nose steering system on wheel placement. According to his supplemental report, Mendenhall intentionally misaligned the steering system on a G-III aircraft by three splines and then by one spline to determine the degree of displacement in the nose wheel caused by the misalignment. Based on this testing, Mendenhall concludes that if a nose wheel steering system in a G-III aircraft is misaligned by three splines to the right, the nose tires will tilt between 23.5 and 25 degrees to the right. When the system is misaligned by one spline, the nose tires will tilt approximately six degrees to the right. Motion to Strike (Dkt. # 102), Ex. 1, Supplemental Mendenhall Report.

Defendant insists Mendenhall's independent testing responds to a claim made by plaintiff's expert, Vincent J. Lepera, during his deposition that one could expect a five degree misalignment of the nose wheels per spline of misalignment in the steering system. Defendant's Response (Dkt. # 133), Ex. 6, at 58-60. Lepera based his claim not on his own testing, but upon testing conducted at the hangar following the incident. Id. at 58. Defendant does not argue that these results were unavailable to Mendenhall when he was completing his initial report and offers no other explanation

7

for why Mendenhall waited until after the submission of his first report to either conduct or report on additional testing he completed.

Defendant also contends that, during his deposition, Mendenhall mentioned the use of the kind of testing in which he engaged in this matter. Whatever passing references Mendenhall made to testing during his deposition, however, he never claimed to have conducted such testing on his own to determine what amount of realignment would produce what degree of incorrect wheel positioning on a G-III. Mendenhall's supplemental report provides no information as to the date or location of the testing and under what conditions, and, because the testing occurred after Mendenhall's deposition, plaintiffs have not had the opportunity to inquire into the details of this testing. Similarly, plaintiffs did not have an opportunity to conduct independent testing of their own or to challenge the reliability of Mendenhall's methodology or findings under <u>Daubert v. Merrell Dow Pharm. Inc.</u>, 509 U.S. 579 (1993), as is their right. For these reasons, the Court agrees that the inclusion of this new information regarding independent testing is prejudicial to plaintiffs.

Having determined that defendant's violation of Rule 26 is prejudicial, the Court turns to the question of whether the prejudice may be cured. Defendant argues that it can remedy any prejudice by permitting plaintiffs to conduct a second deposition of Mendenhall regarding the expansions on his opinions in this matter. For the reasons outlined above, the Court believes that it would undercut the spirit of Rule 26 to permit a party to avoid the sanctions of Rule 37 merely by offering a witness for a second deposition. Moreover, defendant's offer both misunderstands the purpose of Rule 26 and downplays the inconvenience imposed on the parties when witnesses and counsel must reconvene to discuss issues that could have been taken up at the first meeting.

In addition, plaintiffs are correct that the information obtained at any second deposition may well lead to requests for further discovery based upon some previously undisclosed opinion contained in Mendenhall's supplemental report. This consideration leads to the third factor identified in Jacobsen, the potential disruption of trial. The parties are currently scheduled for jury trial in less than a month.[3] Reopening discovery as to Mendenhall's expanded views on Trobert's errors and his independent testing of the spline-to-degree ratio at this stage would undoubtedly require that the case, already pending for almost three years, be continued.

Finally, as to bad faith, the Court finds no evidence of illicit motive on the part of Mendenhall or defendant, although plaintiffs imply that bad faith motivated defendant's decision to submitted an altered report on the last day of the discovery period. A more likely explanation, in the Court's view, is that defendant engaged in what has become an all too common practice before this Court, that is, the submission of "placeholder" expert reports in compliance with the applicable scheduling order followed by the transmission of subsequent, amended versions of those reports for no reason other than that the expert has had time to consider his views more deeply and/or conduct additional testing. Although Rule 26 envisions, indeed requires, amendment in certain specified situations, see Fed. R. Civ. P. 26(e) (1), repeated, unjustified amendments fly in the face of the efficiency-promoting purpose of the rule. Miller v. Pfizer, Inc., 356 F.3d 1326, 1334 (10th Cir. 2004) ("The orderly conduct of litigation demands that expert opinions reach closure." ).

---

[3]  When plaintiffs filed their motion to strike, the jury trial in this matter was approximately a month away. The Court acknowledges that this motion has since been pending during the period of trial continuance. Given the tenor of plaintiffs' motion, however, the Court is unconvinced that they would have taken a different view during this time period. Indeed, in response to an offer of a second deposition, plaintiffs' counsel declining, stating that it "would not cure the prejudice." Defendant's Response (Dkt. # 133), Ex. 4, Email.

While the Court does not find that defendant acted in bad faith in failing to submit a complete report within the requisite time frame, good faith alone is not enough to overcome the other factors. Jacobsen, 287 F.3d at 954.

**IT IS THEREFORE ORDERED** that plaintiffs' motion in limine to exclude testimony relating to Mendenhall's additions to his original expert report (Dkt. # 102) is hereby **granted**[4] insofar as Mendenhall will be prohibited at trial from offering testimony relating to those additions, as described herein.

**DATED** this 3rd day of May, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[4] Since parties do not file their Rule 26 reports with the Court, the Court cannot strike the document.